# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED<br>4 World Trade Center, North Tower<br>New York, NY 10080,<br><br>    Plaintiff,<br><br> v.<br><br>JASON HOSTETLER<br>8346 Gentry St. NW<br>Massillon, OH 44646,<br><br>and<br><br>TINA MIGGE<br>3218 Cornwall Drive NW<br>Canton, OH 44708<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 5:18-cv-1723<br><br>Judge<br><br><br><br><br><br><br><br>**COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

NOW COMES Plaintiff Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), by its undersigned attorney, and for its Complaint for injunctive relief against Defendants Jason Hostetler and Tina Migge ("Defendants") states as follows:

## THE PARTIES

1. Merrill Lynch is a Delaware corporation maintaining its principal place of business at 4 World Financial Center, North Tower, New York, NY 10080 and transacting business in this judicial district at 4678 Munson Street NW, Canton, OH 44718 (the "Canton office"). Merrill Lynch is a citizen of the States of Delaware and New York.

2. Defendant Hostetler is a former Financial Advisor of Merrill Lynch's Canton office, who is a citizen and domiciliary of the State of Ohio and, on information and belief, resides at 8346 Gentry St. NW, Massillon, OH 44646.

3. Defendant Migge is a former Investment Advisor of Merrill Lynch's Canton office, who is a citizen and domiciliary of the State of Ohio and, on information and belief, resides at 3218 Cornwall Drive NW, Canton, OH 44708.

4. Immediate injunctive relief is sought pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

5. Merrill Lynch brings this action pursuant to the Defend Trade Secrets Act ("DTSA") at 18 U.S.C. § 1836 et seq. This Court possesses subject matter jurisdiction over Plaintiff's claim as it arises under the laws of the United States within the meaning of 28 U.S.C. § 1331.

6. This Court possesses supplemental jurisdiction over Merrill Lynch's remaining claims pursuant to 28 U.S.C. § 1367.

7. Alternatively, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Venue in is proper in this District pursuant to 28 U.S.C. § 1391(a) and LR 3.8(b) because Defendants reside in this District. In addition, a substantial part of the events giving rise to Merrill Lynch's claims occurred in this District.

## FACTUAL ALLEGATIONS

9.     Merrill Lynch is engaged in the business of, <u>inter alia</u>, providing financial services.

10.    Defendant Hostetler commenced his employment with Merrill Lynch as a Financial Advisor on or about June 1, 2004.  Defendant Migge commenced her employment with Merrill Lynch as an Investment Advisor on or about March 28, 2000.  <u>See</u> Declaration of Robert Wright (hereafter referred to as "Wright Aff."), attached hereto as Exhibit A, at ¶ 6.

11.    As a condition of their employment with Merrill Lynch, Defendants executed employment agreements (collectively the "Agreements").  The Agreements contain a number of contractual provisions confirming the confidentiality of Merrill Lynch's customer information, prohibiting its use or disclosure to third parties and prohibiting the solicitation of certain Merrill Lynch customers they serviced or whose names became known to them for one year following the termination of their employment.

12.    Defendant Hostetler executed an Agreement entitled the <u>Financial Consultant Employment Agreement and Restrictive Covenants</u>, a true and correct copy of which is attached to Wright Aff. as Exhibit A.  Hostetler's Agreement states, <u>inter alia</u>, that:

> 1.    **All records, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch**.  This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch.  I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch.  **I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by**

> **any competitor of Merrill Lynch either during my employment or at any time thereafter.**
>
> This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.
>
> 2. **If, at any time, I resign from Merrill Lynch**, provoke my termination, or am terminated for cause, **I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means,** either directly or indirectly, **any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity**. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:
>
> (a)     to transfer from Merrill Lynch to me or to my new employer, or
>
> (b)     to open a new account with me or with my new employer, or
>
> (c)     to otherwise discontinue its patronage and business relationship with Merrill Lynch.

Wright Aff., Ex. A at ¶¶ 1-2 (emphasis added in part).

13. Defendant Migge executed an Agreement entitled the <u>Financial Advisor Employment Agreement and Restrictive Covenants</u>, a true and correct copy of which is attached to the Wright Aff. as Exhibit B. Migge's Agreement states, <u>inter alia</u>, that:

> 1. **(a) all information relating to Merrill Lynch clients or customers, whether in original or copied form, is confidential and proprietary to Merrill Lynch, (b) all information disclosed**

**to Merrill Lynch by a third party in confidence is confidential and proprietary to Merrill Lynch, and (c) all information pertaining to Merrill Lynch and/or Bank of America that is not otherwise known to the general public is also confidential and proprietary to Merrill Lynch ((a), (b) and (c) are collectively "Merrill Lynch Confidential Information and Trade Secrets")**. I understand that such Confidential Information and Trade Secrets is a valuable and unique asset belonging to Merrill Lynch, and provides Merrill Lynch with a competitive advantage. I also understand that Merrill Lynch has obligations under state and federal laws and regulations, and bank interagency requirements, including but not limited to the Gramm-Leach Bliley Act and Regulation S-P, to protect the confidentiality of this information, and I acknowledge that those obligations extend to me and agree to comply with relevant corporate information security practices. I further acknowledge and agree that improper use or disclosure of such information would cause immediate and irreparable damage to Merrill Lynch's business. **I agree not to disclose Merrill Lynch Confidential Information and Trade Secrets to any third party, including competitors of Merrill Lynch, at any time during my employment with Merrill Lynch, except for the purposes of conducting business on behalf Merrill Lynch, or at any time after termination**. Upon termination of my employment, I will immediately return all Merrill Lynch Confidential Information and Trade Secrets to Merrill Lynch and will relinquish access to, possession of, and control over any such information in any form. I will permit Merrill Lynch to inspect, prior to removal, any and all materials to be taken from Merrill Lynch offices. I will also surrender and provide to Merrill Lynch or its counsel any computer, handheld device, storage device, telephone, or other electronic device used to conduct business while employed by Merrill Lynch for the purpose of inspecting said device and removing all Merrill Lynch Confidential Information and Trade Secrets. The provision described above also applies to Bank of America.

2. **For a period of one year following the termination of my employment with Merrill Lynch** for any reason, **I agree not to solicit, or initiate contact or communication with**, either directly or indirectly, **any Merrill Lynch and/or Bank of America (including their affiliates) account, customer, client, customer lead, prospect, or referral, whom I served or whose name became known to me during my employment at Merrill Lynch**. The above restraints shall apply to each and every Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any

5

> capacity, including without limitation, reassignments, walk-ins, call-ins, write-ins, transfers, referrals, prospects, cold-calls, seminars, mailers, and lead lists. During my employment, some of the accounts I expect to develop and acquire are likely to be those of individuals I knew or was familiar with prior to joining Merrill Lynch ("Prior Acquaintances"). Nevertheless, because I will be acting as a representative of Merrill Lynch and I will be utilizing and benefitting from Merrill Lynch's goodwill, reputations, name recognition, and other assets and resources, I further agree that the Accounts of such Prior Acquaintances will be subject to the same restraints as all the other Accounts. The only exception will be my immediate family members whose accounts I serviced at the time of my separation of employment. The provision described above also applies to Bank of America.

Wright Aff., Ex. B at ¶¶ 1-2 (emphasis added in part).

14. In addition, Defendant Hostetler agreed to the issuance of injunctive relief in Court to preserve the status quo pending the outcome of arbitration hearings on the merits:

> 4. **In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief**. I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, **I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:**
>
> a) **that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and**
>
> b) **that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and**
>
> \* \* \*
>
> 5. For the purposes of paragraph 4, **I agree to submit to, and confer exclusive jurisdiction on, the United States District**

>**Court or the State Court** which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch. This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction.

Wright Aff., Ex. A at ¶¶ 4-5 (emphasis added).

15. Likewise, Migge agreed to the issuance of injunctive relief in Court to preserve the status quo pending the outcome of arbitration hearings on the merits:

>4. **In the event that I violate, or Merrill Lynch reasonably anticipates that I am about to violate, any of the covenants of paragraphs 1, 2, or 3,** I agree and recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, **I AGREE THAT MERRILL LYNCH MAY OBTAIN A TEMPORARY RESTRAINING ORDER, WITH OR WITHOUT NOTICE, and A PRELIMINARY and PERMANENT INJUNCTION ordering:**
>
>   a) **that I immediately return to Merrill Lynch all customer information and records, whether original, copied, duplicated, reproduced, computerized, handwritten, recreated, compiled, or stored in any way whatsoever, and that I be enjoined and restrained from using or disclosing all such information and records;**
>
>   b) **that, for a period of one year, I be enjoined and restrained from soliciting any customer whom I served or whose name became known to me while employed by Merrill Lynch pursuant to my obligations in paragraph 2 subject to the stated exclusion in paragraph 2; and**
>
>   \*   \*   \*
>
>I consent to the issuance of the above temporary restraining order and/or preliminary injunction, by any court or arbitration panel with jurisdiction over me. To the extent permissible by law, such injunctive relief may be issued without bond. **For purposes of this injunctive relief, I agree to submit to jurisdiction by** FINRA (or its functional successor), t**he United States District Court or the state court for the judicial district or county where I was last employed by Merrill Lynch**, or any other court of appropriate

>jurisdiction. References above to Merrill Lynch include Bank of
>America.

Wright Aff., Ex. B at ¶¶ 4-5 (emphasis added).

16. Merrill Lynch provided the consideration cited in the Agreements to Defendants and has satisfied all conditions precedent. More specifically, Merrill Lynch compensated Defendants at all times during their employment with Merrill Lynch, provided Defendants with opportunities for training, provided Defendants with extensive support services, paid for facilities, computer equipment, market reporting services, and other business expenses, provided Defendants with abundant sales opportunities, paid for Defendants' registrations, and provided Defendants with all Merrill Lynch benefits, systems, and support at all times.

17. In addition to the foregoing, Merrill Lynch provided Defendants with office facilities, secretarial services, clearing services, operational systems, product inventory, sales assistants, research, the benefit of Merrill Lynch advertising, goodwill and name recognition, access to and use of experts in asset management, tax, estate planning and insurance, and with promotional marketing and sales support.

18. In connection with Defendants' employment at Merrill Lynch, Defendants had access to the books and records of Merrill Lynch, the confidential information contained therein, and especially the identity of Merrill Lynch customers, including their names and addresses, financial statements, investment objectives, assets, net worths, investment histories, and the securities held by these customers in their Merrill Lynch accounts.

19. Prior to the termination of their employment, Defendants worked at Merrill Lynch and serviced hundreds of Merrill Lynch customer accounts, representing nearly **$138 million** dollars in assets under Merrill Lynch management. The Merrill Lynch accounts the Defendants

8

serviced generated over **$1.15 million** in annualized commissions for Merrill Lynch.  See Wright Aff. at ¶ 4.

20. On April 6, 2018, Hostetler's employment at Merrill Lynch was terminated for conduct inconsistent with Merrill Lynch's standards related to personal trading, resulting in the loss of manager's confidence.  See Wright Aff. at ¶ 5.

21. Subsequent to Hostetler's termination, his Investment Advisor Tina Migge remained employed at Merrill Lynch until Monday, May 14, 2018, when she resigned from Merrill Lynch without notice and joined Stratos Wealth Advisors, LLC ("Stratos") as an Investment Advisor.  See Wright Aff. at ¶ 6.

22. When Migge left the Canton office on Monday, May 14, 2018, multiple Merrill Lynch employees saw her carrying a large redwell of documents from her office.  See Wright Aff. at ¶ 7.

23. Upon further investigation, Merrill Lynch soon learned that, on Saturday, May 12, 2018, just two days before her sudden retirement, Migge used a printer at the Canton office to print several documents containing confidential Merrill Lynch client information, including a 72-page document entitled "AllClientsandProspects.xls."  See Wright Aff. at ¶ 8.

24. While cleaning out Migge's office, Merrill Lynch personnel located a portion of this document in her office, but were unable to locate the rest of the document or the other documents she printed, despite diligent searching.  Merrill Lynch therefore has reason to believe that she retained the rest of this document and the others, many of which contain confidential information about Merrill Lynch clients.  See Wright Aff. at ¶ 9.

25. In addition, on Friday, May 11, just three days before her sudden resignation, Migge had been given a 21-page document containing account numbers, names, and assets

associated with Merrill Lynch accounts. Merrill Lynch personnel were unable to locate the document, leading Merrill Lynch to believe that Migge retained it. See Wright Aff. at ¶ 10.

26. On May 17, 2018, counsel for Merrill Lynch sent Migge a letter demanding the return of all confidential Merrill Lynch information she may have retained upon her resignation from Merrill Lynch. Migge never responded to that letter. See Wright Aff. at ¶ 11.

27. During its investigation into the circumstances of Migge's resignation, Merrill Lynch learned that Hostetler had also registered as an Investment Advisor at Stratos. See Wright Aff. at ¶ 12.

28. Then, on or around May 30, 2018, Merrill Lynch confirmed that a sensitive document that a Merrill Lynch client had recently provided to Migge had gone missing. Because counsel for Merrill Lynch had not had success contacting Migge directly, they contacted counsel retained by Hostetler in connection with his termination. Migge, through Hostetler's counsel, denied taking the document. To date, however, Merrill Lynch has not been able to locate any of these missing documents, despite diligent efforts to locate them. See Wright Aff. at ¶ 13.

29. Soon after Migge resigned, clients whose accounts Hostetler and Migge had serviced while employed at Merrill Lynch began to report that Hostetler and Migge had contacted them and solicited them to move their accounts to Stratos. See Wright Aff. at ¶ 16, Declaration of James Craig (hereafter referred to as "Craig Aff."), attached hereto as Exhibit B, at ¶ 4.

30. Based on these facts, Merrill Lynch believes that Migge breached her duty of loyalty to Merrill Lynch by acting against Merrill Lynch's interests and for the interests of Hostetler and Stratos by retaining confidential Merrill Lynch customer information for the purpose of misappropriating this information for the benefit of Hostetler and Stratos.

31. At least one client reported that Hostetler and Migge contacted her and attempted to secure a meeting by pretending that they were still employed at Merrill Lynch. See Wright Aff. at ¶ 17.

32. During this same time period, several clients began to ask questions concerning the work ethic, integrity, and honestly of Hostetler's former partner, Merrill Lynch Financial Advisor Kirk Hunter. For example, multiple clients asked Merrill Lynch personnel if it were true that Mr. Hunter spends more time on the golf course than in the office managing their accounts. Upon information and belief, these inquiries were the result of defamatory and disparaging statements made by Hostetler and/or Migge. See Wright Aff. at ¶ 18.

33. To date, Merrill Lynch has received 140 transfer requests from accounts formerly serviced by Hostetler and Migge. See Wright Aff. at ¶ 19.

34. At this time, Merrill Lynch does not know how many other clients Hostetler and Migge have solicited to transfer business away from Merrill Lynch in advance of their resignation from Merrill Lynch. See Wright Aff. at ¶ 20.

35. On June 8, 2018, counsel for Merrill Lynch sent a letter to Hostetler's attorney demanding that Hostetler comply with his contractual obligations, cease making defamatory statements, and cease soliciting Merrill Lynch clients. A true and correct copy of this letter is attached to the Wright Aff. as Exhibit C.

36. Merrill Lynch was advised that Hostetler's attorney was on vacation and Merrill Lynch did not receive a response until June 26, 2018. A true and correct copy of this letter is attached to the Wright Aff. as Exhibit D. Defendants denied soliciting clients to transfer business away from Merrill Lynch.

37. Based on all evidence available to it, in spite of the denials, Merrill Lynch believes and therefore avers that Hostetler and Migge have engaged in solicitation of clients to transfer business away from Merrill Lynch and are continuing to do so.  See Wright Aff. at ¶ 23.

38. On June 27, 2018, counsel sent another demand letter to Hostetler's attorney, again demanding that Hostetler comply with his obligations to Merrill Lynch.  A true and correct copy of this letter is attached to the Wright Aff. as Exhibit E.  To date Merrill Lynch has not received a response to that correspondence.  See Wright Aff. at ¶ 24.

39. If Defendants are able to continue to freely solicit Merrill Lynch clients, Merrill Lynch will suffer an irreparable injury.  Not only is Merrill Lynch losing certain clients, and the revenues generated from those clients' accounts, but other financial advisors will be induced to solicit clients when they transfer firms if they believe it gives them a competitive advantage and there are no repercussions for their actions.  See Wright Aff. at ¶ 25.

40. Defendants' conduct was and is in furtherance of a scheme to obtain and convert to their personal use and gain the information contained in the records of Merrill Lynch, the property of Merrill Lynch, the names and addresses and other customer information used to conduct business at Merrill Lynch, the client lists and contacts of Merrill Lynch, the trade secrets of Merrill Lynch, confidential information of Merrill Lynch, Merrill Lynch procedures and systems, Merrill Lynch marketing and promotional techniques, and the goodwill generated, directly and indirectly, by their association with Merrill Lynch, and to use this information to solicit the Merrill Lynch clients Defendants serviced and whose names became known to Defendants while employed by Merrill Lynch to transfer their business to Defendants' new employer.

41. Merrill Lynch believes and, therefore, avers that:

12

(a) Defendants have possession or control of extensive confidential Merrill Lynch customer information, Merrill Lynch proprietary information, Merrill Lynch trade secrets, and lists of Merrill Lynch customer accounts and/or account information for customers they serviced;

(b) Defendants have used and will continue to use this information to solicit Merrill Lynch accounts and to divert the business of Merrill Lynch customers from Merrill Lynch to their new employer; and

(c) Defendants will otherwise continue to engage in acts constituting a breach of the terms of their Merrill Lynch employment contracts and Merrill Lynch policies and guidelines; a breach of their duty of loyalty; and other tortious conduct, including conversion of trade secrets and unfair competition.

42. By virtue of the foregoing, Merrill Lynch has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendants.

43. Unless Defendants are temporarily and preliminarily enjoined from the foregoing conduct, Merrill Lynch will be irreparably harmed by:

(a) Disclosure of trade secrets, customer lists, and other confidential information which is solely the property of Merrill Lynch and its clients;

(b) Loss of confidentiality of the information contained in clients' records, loss of confidentiality of clients' financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

(c) Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

(d) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

44. Merrill Lynch has no adequate remedy at law.

## COUNT I
## BREACH OF CONTRACT

45.     The allegations of Paragraphs 1 through 44 are incorporated herein by reference with the same force and effect as if set forth in full below.

46.     Defendants have violated their Agreements with Merrill Lynch, as well as Merrill Lynch's confidentiality and non-disclosure policies, which Defendants agreed to abide by in writing.

47.     Defendants are continuing to violate their contractual obligations under their Agreements and other Merrill Lynch policies.

48.     As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS (Defend Trade Secrets Act)
### (Against Both Defendants)

49.     The allegations of Paragraphs 1 through 48 are incorporated herein by reference with the same force and effect as if set forth in full below.

50.     The books and records of Merrill Lynch, the confidential information contained therein, and especially the identity of Merrill Lynch customers, including their names and addresses, financial statements, investment objectives, assets and/or securities held by these customers in their Merrill Lynch accounts and other financial information, are trade secrets of Merrill Lynch within the meaning of 18 U.S.C. § 1839(3).

51.     Merrill Lynch's customer information is a compilation of information used in Merrill Lynch's business that gives Merrill Lynch an opportunity to obtain a competitive advantage over other competitors who do not know or have access to the contents of this customer list and additional customer related information.

52. Merrill Lynch has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including by having Defendants and other employees, as a condition of their employment, enter into the Agreements described above prohibiting, <u>inter alia</u>, the use and disclosure of such information outside of Merrill Lynch.

53. Merrill Lynch believes and therefore avers that Defendants are presently misusing Merrill Lynch's confidential customer information in furtherance of their efforts to compete with Merrill Lynch and in violation of their Agreements not to do so.

54. The foregoing conduct of Defendants constitutes a misappropriation and misuse of Merrill Lynch's confidential, trade secret information in violation of federal law.  <u>See</u> 18 U.S.C. § 1832.

55. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

<u>**COUNT III**</u>
<u>**MISAPPROPRIATION OF TRADE SECRETS (ORC § 1333.61(D)**</u>
**(Against Both Defendants)**

56. The allegations of Paragraphs 1 through 55 are incorporated herein by reference with the same force and effect as if set forth in full below.

57. The books and records of Merrill Lynch, the confidential information contained therein, and especially the identity of Merrill Lynch customers, including their names and addresses, financial statements, investment objectives, assets and/or securities held by these customers in their Merrill Lynch accounts and other financial information, are trade secrets of Merrill Lynch subject to protection under Ohio law.

58. Merrill Lynch's customer information is a compilation of information used in Merrill Lynch's business that gives Merrill Lynch an opportunity to obtain a competitive

advantage over other competitors who do not know or have access to the contents of this customer list and additional customer related information.

59. Merrill Lynch has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including by having Defendants and other employees, as a condition of their employment, enter into the Agreements described above prohibiting, inter alia, the use and disclosure of such information outside of Merrill Lynch.

60. Merrill Lynch believes and therefore avers that Defendants are presently misusing Merrill Lynch's confidential customer information in furtherance of their efforts to compete with Merrill Lynch and in violation of their Agreements not to do so.

61. The foregoing conduct of Defendants constitutes a misappropriation and misuse of Merrill Lynch's confidential, trade secret information in violation of Ohio law. See ORC § 1333.61(D).

62. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

<b><u>COUNT IV</u></b><br><b><u>BREACH OF DUTY OF LOYALTY</u></b><br><b>(Against Migge Only)</b>

63. The allegations of Paragraphs 1 through 62 are incorporated herein by reference with the same force and effect as if set forth in full below.

64. Defendant Migge has violated the common law duty of loyalty and the fiduciary duty arising under her Agreement and relationship with Merrill Lynch in that, while employed by Merrill Lynch, Defendant Migge secretly conspired with Hostetler and others to deprive Merrill Lynch of its clients, business information, and trade secrets, including by, on information and belief, removing from Merrill Lynch and transferring to Hostetler or others highly

confidential trade secret customer lists and customer information for competitive use adverse to the interests of Merrill Lynch.

65. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

**COUNT V**
**UNFAIR COMPETITION**
**(Against Both Defendants)**

66. The allegations of Paragraphs 1 through 65 are incorporated herein by reference with the same force and effect as if set forth in full below.

67. The foregoing conduct of Defendants constitutes an unfair method of competition.

68. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

**COUNT VI**
**UNFAIR COMPETITION (ORC § 4165)**
**(Against Both Defendants)**

69. The allegations of Paragraphs 1 through 68 are incorporated herein by reference with the same force and effect as if set forth in full below.

70. Through the foregoing acts, Defendants created a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the services they offered on behalf of Stratos.

71. Through the foregoing acts, Defendants created a likelihood of confusion or misunderstanding among Merrill Lynch customers as to their affiliation, connection, or association with Merrill Lynch.

72. Defendants' conduct created a strong likelihood of damage to Merrill Lynch through the loss of customer relationships and damage to Merrill Lynch's goodwill and reputation with its customers.

73. As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

**WHEREFORE**, by virtue of the foregoing acts complained of in Counts I, II, III, IV, V, and VI, Merrill Lynch demands judgment in its favor and against Defendants for temporary and preliminary injunctive relief pending expedited arbitration hearings on the merits before a duly appointed panel of arbitrators pursuant to Rule 13804 of the Financial Industry Regulatory Authority ("FINRA") Code of Arbitration Procedure.  Merrill Lynch respectfully requests that a Temporary Restraining Order and/or a Preliminary Injunction issue immediately enjoining Defendants, directly or indirectly, whether alone or in concert with others, including any officer, agent, employee and/or representative of their new employer from:

(a) soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch who Defendants served, assisted others in serving, or whose name became known to Defendants while in the employ of Merrill Lynch, including the purpose of advising said clients of their new affiliation or for the purpose of inviting, encouraging or requesting the transfer of any accounts or business patronage from Merrill Lynch (excluding Defendants' family and relatives);

(b) soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whose records or information Defendants used in violation of paragraph their Agreements. This specifically includes any client whom Defendants may have contacted by mail, phone or otherwise through the use of any information obtained by Defendants while in the employ of Merrill Lynch (excluding Defendants' family and relatives); and

(c) using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the records of Merrill Lynch or concerning its clients, including, but not limited to, the names, addresses, and financial information of said clients; and

(d) destroying, erasing, or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) in Defendants' possession or control which were obtained from or contain information derived from any Merrill Lynch

records, which pertain to Merrill Lynch clients whom Defendants served or whose names became known to Defendants while employed by Merrill Lynch, or which relate to any of the events alleged in the Complaint in this action.

Dated: July 25, 2018                                    Respectfully submitted,


                                                        */s/ David H. Wallace*
                                                        David H. Wallace (0037210)
                                                        dwallace@taftlaw.com
                                                        TAFT STETTINIUS & HOLLISTER LLP
                                                        200 Public Square, Suite 3500
                                                        Cleveland, Ohio 44114-2302
                                                        Telephone: 216.241.2838
                                                        Fax: 216.241.3707

                                                        *Attorneys for Plaintiff,*
                                                        *Merrill Lynch, Pierce, Fenner & Smith*
                                                        *Incorporated*


23239290.1